**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TL Harvey, | No. CV-24-00276-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Maxwell & Morgan P.C., et al., | |
| Defendants. | |

Plaintiff TL Harvey seeks an injunction to stop ongoing foreclosure proceedings that his homeowners association filed against him in Pinal County Superior Court. To be entitled to injunctive relief, Harvey would need to establish some likelihood of success on the merits. Harvey has not done so because he has not stated any claims for relief. Therefore, the complaint will be dismissed and the request for injunctive relief denied.

## I.      Background

Harvey filed his initial complaint on February 8, 2024, but filed an amended complaint on February 26, 2024. The court construes the February 26 complaint as Harvey's amendment as a matter of course under Fed. R. Civ. P. 15(a)(1), making it the operative complaint. The complaint consists of 74 pages asserting fourteen claims against nineteen defendants. The court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The court cannot, however, "supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

1    The following facts are alleged in the complaint, construed in the light most
2    favorable to Harvey. Harvey "is a married retired elderly Black man" who in 2012
3    purchased a home in Pinal County. (Doc. 7 at 5.) In connection with that purchase, Harvey
4    was told the home "was in a Homeowner's Association and membership was mandatory
5    and automatic." (Doc. 7 at 6.) The homeowners association is known as the Rancho El
6    Dorado ("RED") HOA. The RED HOA imposes "quarterly assessments" on all
7    homeowners "for the maintenances [sic] of the 'Common' areas." (Doc. 7 at 6.)

8    Immediately after moving into the home, Harvey was "targeted by RED Boo-gal-
9    woo boys' daily patrols" in the form of repeated "drive-bys." (Doc. 7 at 6.) The "drive-
10   bys" consisted of unknown individuals driving by Harvey's house to identify violations
11   of the HOA regulations. In late 2013 and early 2014, Harvey began receiving tickets
12   alleging violations of the RED HOA regulations. Around that same time, Harvey told the
13   "President or Head of the Board of Directors of Rancho El Dorado" that he felt "targeted
14   because of his race by the individuals patrolling the neighborhood selectively enforcing
15   minor issues." (Doc. 7 at 7.)

16   Sometime in 2015, Harvey sought permission from the RED HOA to install a
17   window air conditioning unit. The RED HOA did not respond and Harvey installed the
18   unit. The "Boo-gal-woo boys at the direction of the Board of Directors of RED [then]
19   intensified their campaign of retaliatory abuses" by issuing additional unwarranted tickets.
20   (Doc. 7 at 10.) The tickets resulted in Harvey being assessed "thousands of dollars in fees,
21   interest, attorney fees and other penalties." (Doc. 7 at 10.) Harvey did not pay those
22   amounts.

23   In 2022, the RED HOA obtained a money judgment against Harvey in Pinal County
24   Justice Court (which Harvey sometimes calls "traffic court") based on the unpaid fees.
25   (Doc. 1-1 at 28.[1]) Judge Lyle Riggs presided over those proceedings. The fees remained
26   unpaid after the judgment and the RED HOA obtained a lien on Harvey's home. In

27
28   _____
[1] The operative complaint references a document attached only to the original complaint.
(Doc. 7 at 29.). The court assumes Harvey inadvertently did not attach the document to the
operative complaint and the court will consider that document.

December 2023, the RED HOA filed suit against Harvey in Pinal County Superior Court to foreclose on the lien. Approximately two months later, Harvey filed his complaint in federal court.

The operative complaint names the following entities and individuals as defendants:

1. Maxwell & Morgan P.C., Jeffrey B. Corben, W. William Nikolaus, and Austin Baillio: the law firm and three of its attorneys representing the RED HOA in state court ("Law Firm defendants");

2. FirstService Residential LLC: the property management company responsible for "receiving and applying" the assessments paid to the RED HOA;

3. The RED HOA;

4. William Day, John Coleman, Patricia Parker, Audrey Gibson, Dallas Paulsen, David O'Laighin, Tynesha Wyatt, Enrico Spinola Jr., Courtney Yogerat, Brittaney Mills, Joshua Hughes, and Raymond Nieves: current or past members of the RED HOA's board of directors;

5. Judge Lyle Riggs: judge on the Pinal County Justice Court.

Harvey asserts fourteen claims against either all or subsets of these defendants.[2] Harvey's claims are duplicative and overlapping. For ease of analysis, the court groups and reorders the claims as follows:

1. "Due Process Clause Fourteenth Amendment" and "Fifth Amendment U.S. Constitution" against all defendants (Counts 7 and 9); "Eighth Amendment (Excessive Fines)" and "First Amendment" against all defendants except Judge Riggs (Counts 12 and 13);

2. "42 U.S.C. § 1983 Fourteenth Amendment Due Process Clause" against all defendants (Count 1);

3. "42 U.S.C. § 1985(3)" against all defendants (Count 3);

4. "42 U.S.C. § 1981(c)" against all defendants (Count 4) and breach of contract

_____
[2] The complaint list two claims as the "seventh cause of action."

against all defendants except Judge Riggs (Count 6);

5.   "42 U.S.C. §§ 3604 and 3617 (Fair Housing Act)" and "Fair Housing Act 42 U.S.C. § 3601" against all defendants except Judge Riggs (Counts 2 and 8);

6.   "RICO 18 U.S.C. § 1964(c), 18 U.S.C. § 1961(1)(5)" against all defendants (Count 10);

7.   "Mail fraud 18 U.S.C. § 1341" against all defendants except Judge Riggs (Count 11);

8.   "Fraud (Intentional Misrepresentation Concealment)" against all defendants except Judge Riggs (second Count 7);

9.   Breach of fiduciary duty against the RED HOA, all past and present board members, and FirstService Residential (Count 5).

Harvey seeks monetary damages and "an immediate Court Order for Injunctive Relief prohibiting all Defendants . . . from attempts to Foreclose on the Harvey's home." (Doc. 7-1 at 34.)

Harvey attempted to serve some of the defendants and, on March 28, 2024, individuals and entities affiliated with the RED HOA filed a motion to dismiss. (Doc. 17.) It is not clear whether the RED HOA itself fully joined in that motion. (*See* Doc. 17 at 2 n.2.) The motion attacked the merits of Harvey's claims but also argued service of process was not proper. Harvey then filed a motion seeking permission to serve certain defendants by certified mail. (Doc. 19.) Without an order addressing the alternative service issue, Harvey continued his attempts to serve certain defendants and on May 6, 2024, the Law Firm defendants filed a motion to dismiss.[3] (Doc. 36.)

On July 9, 2024, Harvey filed a "Motion for Injunction." (Doc. 50.) That motion sought a preliminary injunction stopping the "sham process by the Arizona state courts" until this federal suit is resolved. (Doc. 50 at 12.) Harvey also filed a second motion for alternative service, again seeking permission to serve certain defendants by certified mail. (Doc. 53.) Finally, on August 28, 2024, Harvey filed an "Emergency Motion for Injunctive

---

[3] The Law Firm defendants also filed a motion to set aside default. (Doc. 37.) Because no default had been entered, that motion is denied as moot.

Relief." (Doc. 61.) That motion repeats some of the arguments made in Harvey's earlier motions and responses to defendants' motions. The August 28 motion indicates there is special urgency to obtaining injunctive relief because the state court foreclosure proceeding in Pinal County Superior Court may be nearing its end.

Harvey can obtain injunctive relief only if he is likely to succeed on the merits or, at the very least, there are serious questions going to the merits. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, before evaluating Harvey's request for injunctive relief the court will address the motions to dismiss and whether Harvey has stated any claims for relief. He has not.

## II.    Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

FirstService Residential and some individuals affiliated with the RED HOA filed a motion to dismiss. (Doc. 17.) Other defendants who are also individuals associated with the RED HOA did not join that motion, likely because they have not yet been served. When less than all defendants file a motion to dismiss, the court can dismiss claims against the nonmoving defendants when those defendants "are in a position similar" to the moving defendants. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). Here, all the individuals associated with the RED HOA are in the same position and the court will not differentiate between those individuals who joined the motion to dismiss and those who did not.

1

**A. Judge Riggs**

Harvey has not served Judge Riggs and Judge Riggs has not filed a motion to dismiss.[4] However, the court may sua sponte dismiss claims when the plaintiff "cannot possibly win relief." *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981). Harvey is attempting to assert claims for money damages against Judge Riggs based on actions Judge Riggs took in his judicial capacity during the proceedings in justice court. Judges are entitled to absolute immunity from money damages and all claims against Judge Riggs are dismissed without leave to amend. *Burk v. State*, 156 P.3d 423, 426 (Ariz. Ct. App. 2007) (noting "judges are absolutely immune from damages lawsuits for their judicial acts"); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (discussing "the immunity of judges from liability for damages for acts committed within their judicial jurisdiction"). References in the remaining discussion to "all defendants" is to all defendants other than Judge Riggs.

**B. No Direct Constitutional Causes of Action**

Harvey asserts claims for damages directly under the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment, the Eighth Amendment, and the First Amendment. "[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Therefore, Harvey's direct claims under the Constitution (Counts 7, 9, 12, and 13) are dismissed without leave to amend.

**C. Section 1983 Claim**

Harvey's § 1983 claim is brought against all defendants. A § 1983 claim "requires the wrongdoer to be a state actor." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021). There are four tests to determine whether private entities or individuals qualify as state actors: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Id.* at 1167. Regardless of which test a plaintiff invokes, the basic inquiry is "whether the nature of the relationship between

---

[4] Judge Riggs made a special appearance to oppose Harvey's request to complete alternative service. (Doc. 56.)

the private party and the government is such that the alleged infringement of federal rights is fairly attributable to the [government]." *Id.* (quotation marks and citation omitted).

All the defendants are private entities or individuals. Harvey does not allege sufficient facts in the complaint that these defendants meet one of the tests by which they might be deemed state actors for purposes of § 1983 liability. Harvey is aware of the various tests for determining who will qualify as a state actor. (Doc. 44 at 6-8.) But he does not provide any clear argument how any defendant satisfies one of the tests. Instead, Harvey seems to focus on his belief that the defendants qualify as state actors merely because they are pursuing litigation against him in state court. That is not correct.

Harvey relies almost exclusively on *Shelly v. Kraemer*, 334 U.S. 1 (1948) to argue the defendants qualify as state actors. "*Shelley* held that a state court's enforcement of racially restrictive housing covenants entered into between private land owners amounts to state action in violation of the Equal Protection Clause." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998 (9th Cir. 2013). While not entirely clear, Harvey appears to argue the court should extend *Shelley* to all litigants involved in state court matters. That is, Harvey argues all litigants become state actors when they use state courts to achieve their goals. But *Shelley* "has generally been confined to the context of discrimination claims under the Equal Protection Clause." *Id.* And accepting Harvey's extension of *Shelley* would result in "the distinction between private and governmental action [being] obliterated." *Id.* at 999 (quoting *Edwards v. Habib*, 397 F.2d 687, 691 (D.C.Cir.1968)). Mere participation in state court litigation is not sufficient to render private entities and individuals state actors. *Shucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988). None of the defendants qualify as state actors and Harvey's § 1983 claim (Count 1) is dismissed without leave to amend.

### D. "42 U.S.C. § 1985(3)"

To state a claim under § 1985(3), a plaintiff must allege "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is

1  either injured in his person or property or deprived of any right or privilege of a citizen of

2  the United States." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v.*

3  *Scott*, 463 U.S. 825, 828–29 (1983). A viable § 1985(3) claim "requires at least one of the

4  wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. W.*

5  *Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021).

6     As discussed above, Harvey has not identified any state actor that might be involved

7  in the alleged conspiracy. Therefore, this claim (Count 4) is dismissed without leave to

8  amend.

9          **E.  "42 U.S.C. § 1981(c)" and Breach of Contract**

10    Section 1981 prohibits purposeful racial discrimination in the making or enforcing

11  of contracts. "Any claim brought under § 1981 . . . must initially identify an impaired

12  'contractual relationship,' . . . under which the plaintiff has rights." *Domino's Pizza, Inc.*

13  *v. McDonald*, 546 U.S. 470, 476 (2006). Similarly, a claim for breach of contract requires

14  the parties have an existing contractual relationship.

15    Harvey has not identified the contractual relationship at issue for any defendant. He

16  also has not responded to defendants' assertions that he has no contractual relationship with

17  most of them. (*See, e.g.*, Doc. 17 at 3, Doc. 36 at 13-15.) By failing to respond, Harvey has

18  effectively abandoned his breach-of-contract claim. *Carvalho v. Equifax Info. Servs. LLC*,

19  629 F.3d 876, 888 (9th Cir. 2010). Further, it is not plausible that Harvey has contractual

20  relationships with each and every defendant—including a law firm and individuals serving

21  on the HOA board. Harvey's § 1981 and breach of contract claims against all defendants

22  except RED HOA are therefore dismissed without leave to amend.

23    The defendants admit there could plausibly be a contract between Harvey and the

24  RED HOA. (Doc. 17 at 12.) Harvey is granted leave to amend these contract-related claims

25  (Counts 4 and 6) against the RED HOA only.

26

27  //

28

### F.  "42 U.S.C. §§ 3604 and 3617 (Fair Housing Act)" and "Fair Housing Act 42 U.S.C. § 3601"

Harvey alleges claims under various provisions of the Fair Housing Act, but he has not provided any allegations that would support plausible claims. Section 3604 prohibits discrimination in the sale or rental of housing and section 3617 prohibits retaliation against individuals who invoke the Fair Housing Act. Both sections require a plaintiff to show that the defendant is "responsible for the resulting . . . housing environment." *Morris v. W. Hayden Est. First Addition Homeowners Ass'n Inc.*, 104 F.4th 1128, 1147 (9th Cir. 2024). Harvey alleges all defendants violated these sections when they "refused to make any accommodations . . . that would facilitate the policy of the United States government that fair housing be made available throughout the U.S." (Doc. 7 at 30.) Such conclusory allegations are insufficient.

Harvey's complaint does not allege facts showing the Law Firm defendants are responsible for creating or perpetuating an allegedly discriminatory housing environment. Because they are not "housing providers" or "participants in housing-related services or transactions" (Doc. 36 at 10), it is not plausible that they would be responsible for Harvey's housing environment as the FHA demands. Harvey's FHA claims against the Law Firm defendants are therefore dismissed without leave to amend.

Homeowners associations, in contrast, may be liable under the FHA in certain situations. *See id*. at 1143-45. But even as to the RED HOA and related defendants, Harvey's complaint is not clear enough to meet Rule 8's standards. The complaint mentions that Harvey needed "accommodations," but does not even allude to who could have accommodated him or how. *See, e.g.*, *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021) (noting section 3604 prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling"). The complaint sometimes identifies the "accommodations" Harvey needed as permission to keep his "window cooler that did not face nor was it near any common area" despite "any

1    so called 'Architectural Committees' authority." (Doc. 7-1 at 20-21). There is no
2    explanation of Harvey's disability or how the window cooler in a particular location was a
3    necessary accommodation for that disability. As to the RED HOA and related defendants,
4    Harvey's FHA claims (Counts 2 and 8) are therefore dismissed with leave to amend.

5                          **G. Civil Rico**

6        Harvey asserts a civil RICO claim. Such claims "are notoriously difficult to plead
7    plausibly and . . . are rarely successfully pleaded." *Cao v. Landco H&L, Inc.*, No.
8    120CV01180ENVRML, 2022 WL 3997746, at *2 (E.D.N.Y. Sept. 1, 2022).

9        "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise
10   (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing
11   injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours
12   & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation marks and citation omitted). Without
13   addressing whether Harvey has pleaded sufficient facts to support each element, the RICO
14   claim is dismissed because Harvey has not adequately pleaded any predicate acts.

15       Construed liberally, Harvey appears to identify the necessary predicate acts as acts
16   defendants took to assess and collect fines imposed by the RED HOA. Although not
17   entirely clear, Harvey seems to believe those acts constituted mail fraud. *See, e.g.*,
18   *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)
19   (noting mail fraud can serve as predicate acts). But the complaint does not identify the
20   precise actions taken by each individual or entity. For example, the complaint alleges each
21   of the individual defendants associated with the RED HOA were "willing participant[s]"
22   in the wrongful behavior, but there are no allegations of what each defendant did and when.
23   Without factual allegations providing more specific details, Harvey has not stated a claim
24   for relief. *Id.* (requiring predicate acts of mail fraud be pled with particularity); *Mostowfi
25   v. i2 Telecomm. Int'l Inc.*, 269 F. App'x 621, 625 (9th Cir. 2008) (in pleading fraud
26   predicates for civil RICO, plaintiff must provide "a coherent presentation of [his] theory").
27   The RICO claim is dismissed with leave to amend. Given the difficulty of pleading a viable
28   civil RICO claim, Harvey should carefully consider whether the present facts can possibly

1    support such a claim.

2    ### H. "Mail fraud 18 U.S.C. § 1341"

3         Harvey has alleged a claim under the criminal mail fraud statute against all

4    defendants except Judge Riggs. "[T]he mail fraud statute does not provide a private right

5    of action." *Cirino v. GMAC Mortg. LLC*, 667 F. App'x 248, 249 (9th Cir. 2016). This claim

6    is dismissed without leave to amend.

7    ### I. Fraud

8         Harvey alleges all defendants committed fraud by assessing or attempting to collect

9    the fines imposed by RED HOA. (Doc. 7-1 at 13-19.) This claim suffers from the same

10   flaw as Harvey's civil RICO claim.

11        Federal Rule of Civil Procedure 9(b) requires that when "alleging fraud or mistake,

12   a party must state with particularity the circumstances constituting fraud or mistake." This

13   requires the complaint identify "the circumstances constituting fraud, including such facts

14   as the times, dates, places, benefits received, and other details of the alleged fraudulent

15   activity, so that the defendant can prepare an adequate answer from the allegations." *In re*

16   *Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1191 (9th Cir. 2024) (quotation marks

17   and citation omitted). Harvey has provided general information regarding the alleged fraud,

18   such as defendants filing "deliberate misrepresentation[s] of the fact(s)" in state court.

19   (Doc. 7-1 at 17.) Harvey has also provided some information regarding particular

20   "defective 'Notices'" he received. (Doc. 7-1 at 26.) But even read as a whole, the complaint

21   does not identify the exact acts taken by each defendant to state a fraud claim. This claim

22   is dismissed with leave to amend.

23   ### J. Breach of Fiduciary Duty

24        Harvey asserts a claim for breach of fiduciary duty against the RED HOA, its

25   affiliated individuals, and FirstService Residential. These defendants seek dismissal of the

26   claim because they do not owe Harvey any fiduciary duties. (Doc. 17 at 11 (citing *Rohde*

27   *v. Beztak of Arizona, Inc.*, 793 P.2d 140 (Ariz. Ct. App. 1990).) *Rohde* held a homeowners

28   association did not "owe[] a fiduciary duty to a member of the association" in the context

of a claim the HOA breached its duty to appoint an architectural committee. *Id.* at 142, 145. But other Arizona Court of Appeals cases before and after *Rohde* appear to hold otherwise in the limited context of a homeowner's request that the HOA provide an accounting. *See Divizio v. Kewin Enterprises, Inc.*, 666 P.2d 1085, 1088 (Ariz. Ct. App. 1983) (holding lot owners were entitled to an accounting from an HOA because "[t]he parties [had] a fiduciary relationship, one of trust"); *Campbell v. Florence Gardens Mobile Home Ass'n*, No. 2 CA-CV 2021-0091, 2022 WL 2437869, at *4 (Ariz. Ct. App. July 5, 2022) (suggesting *Divizio* recognized only a limited fiduciary duty with respect to "the collection or use of funds").

The current complaint does not make clear if Harvey's breach of fiduciary duty claim against the RED HOA is based on the handling of assessments or on unrelated wrongdoing such as the failure to approve his accommodation. The breach of fiduciary duty claim is therefore dismissed. Harvey has not cited, and the court has not located, any authority that would allow for a breach of fiduciary duty claim against individual board members or service companies hired by a homeowners association such as FirstService Residential. Harvey is therefore permitted to amend this claim against the RED HOA only.

## III.  Injunctive Relief

Harvey has not stated claims for relief. Therefore, the court cannot grant any injunctive relief. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Harvey's two requests for injunctive relief are denied.

## IV.  Leave to Amend

Harvey has fallen short of stating any claim for relief, but the court grants him one opportunity to amend his complaint. In doing so, Harvey may not reallege claims against Judge Riggs. Similarly, Harvey may not reallege claims that require the presence of a state actor or any other claims as to which the court has denied leave to amend. Therefore, Harvey may amend only the following claims: 42 U.S.C. § 1981 and breach of contract

claims as to the RED HOA only; Fair Housing Act claims as to the RED HOA and related defendants only; the civil RICO claim; fraud; and the breach of fiduciary duty claim as to the RED HOA only. Before amending, Harvey should consider Federal Rule of Civil Procedure 8(a)(2). That rule requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A rambling complaint that fails to tie specific defendants to alleged legal wrongs does not meet Rule 8's requirement of "simplicity, directness, and clarity." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). The court will not impose a page limit on the amended complaint, but it is unlikely that Harvey needs more than twenty pages to state viable causes of action on the small number of claims he is permitted to amend.

In deciding whether to file an amended complaint, Harvey should also consider additional arguments made in the motions to dismiss that are not addressed in this order. For example, defendants argued certain claims were barred by the statute of limitations and that Harvey was attempting to collaterally attack the result of previous proceedings. (Doc. 36 at 9, 16.) Harvey must consider those arguments and he should not reallege claims barred by the applicable statute of limitations or other applicable law.

Finally, Harvey has violated the local rules in multiple filings. The local rules establish page limits for motions, responses, and replies. Local Rule 7.2(e). Among other violations, Harvey has filed a 25-page opposition (Doc. 26), a 32-page opposition (Doc. 44), and a 19-page motion (Doc. 50). In the future, the court may strike any filing that does not comply with the Local Rules regarding format or length.

## V.    Alternative Service

Harvey has filed two motions requesting leave to serve certain defendants via alternative means. Because the complaint is being dismissed in its entirety, it is not clear which defendants will remain part of this suit. Therefore, the court will deny the motions regarding service as moot. Should Harvey file an amended complaint, he may renew his request to complete alternative service if appropriate. Harvey should note that the reasons offered in his previous motions for alternative service are unlikely to be deemed sufficient

to allow alternative service. Thus, if Harvey chooses to amend, he should make renewed efforts to serve the amended complaint in the usual manner outlined in Rule 4.

Accordingly,

**IT IS ORDERED** the Motions to Dismiss (Doc. 17, 36) are **GRANTED**. The complaint (Doc. 7) is **DISMISSED** in its entirety.

**IT IS FURTHER ORDERED** no later than **September 20, 2024**, Plaintiff may file an amended complaint in compliance with the terms of this order. The Clerk of Court is directed to enter a judgment of dismissal with prejudice in the event no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Motions for Alternative Service (Doc. 19, 53) are **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Set Aside Default (Doc. 37) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Injunction (Doc. 50) and Emergency Motion for Injunctive Relief (Doc. 61) are **DENIED**.

Dated this 5th day of September, 2024.

**Honorable Krissa M. Lanham**
**United States District Judge**